Scott H. Bernstein
**SKOLNICK LEGAL GROUP, P.C.**
*Proposed Restructuring Counsel to*
*Park Avenue Leather Goods LLC*
103 Eisenhower Parkway, Suite 305
Roseland, New Jersey 07068
Telephone: (973) 403-0100
Facsimile: (973) 488-7140
scott@skolnicklegalgroup.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re:                                            Chapter 11

PARK AVENUE LEATHER GOODS LLC,            Case No. 20-12495
                          Debtor.
----------------------------------------------------------x

### DECLARATION OF STEVEN M. CHERNIAK IN SUPPORT OF
### DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY MOTIONS

I, Steven M. Cherniak, hereby declare under penalty of perjury:

1.      I am the Chief Operating Officer of Park Avenue Leather Goods LLC, a limited liability company organized under the laws of the State of New York and the above-captioned debtor and debtor in possession (the "Debtor").

2.      I have served in this role since June 2018.   In my capacity as the Chief Operating Officer, I am generally familiar with the Debtor's day-to-day operations, business and financial affairs, and books and records.  I submit this declaration to assist the Court and the parties in interest in understanding the circumstances compelling the commencement of this Chapter 11 case, to provide evidentiary support for the Debtor's Chapter 11 petition and certain motions filed today (collectively, the "First Day Motions"), and to set forth certain additional information about the Debtor, as required by Local Rule 1007-2.

3.      Except as otherwise indicated, all facts in this declaration are based upon my personal knowledge, my discussions with the Debtor's advisors, and my review of relevant

documents and information concerning the Debtor's operations and financial affairs, or my opinions based upon my experience and knowledge. I am over the age of eighteen and am authorized to submit this declaration on behalf of the Debtor. If called upon to testify, I could and would testify competently to the facts set forth in this declarant.

**Introduction**

4.       The Debtor – an iconic luxury luggage retailer and Manhattan staple since 1946 – is suffering profoundly from the Covid-19 Pandemic. As a result of the pandemic, the Debtor was forced to close and vacate its one brick and motor store that was located at 445 Park Ave, New York, New York, formerly surrender its office space that was located at 501 Madison Avenue, New York, New York, furlough all but one employee, and dramatically reduce orders for new merchandise. Further, with businesses closed around the globe, the cancellation of in-person business meetings and conferences, and an unprecedent decline in personal vacation travel, the demand for high-end, formal and professional luggage, travel accessories, and leather goods, comprising significantly all of the Debtor's business has experienced a severe and lasting decline. The Debtor is not alone in experiencing a profound decline in business because of the Covid-19 Pandemic. Among other high-end luggage retailers that have closed or are in the process of closing are Specialty Luggage in Pittsburgh, Pennsylvania, and Edwards Luggage in Palo Alto, California.

5.       The Debtor determined to commence this Chapter 11 case to conduct an operational rightsizing, including the rejection of an existing store lease and an existing license agreement for its retail website, and to obtain post-petition financing necessary to fund this Chapter 11 case and provide ongoing capital on a go-forward basis for its internet based business (https://tanthony.com/) and its new retail store located at 107 East 57th Street in Manhattan. These circumstances led to successful negotiations with the Debtor's secured lender, Bespoke Capital

Services LLC, and its equity holder, CSC T. Anthony, LLC,[1] regarding the filing of the Debtor's

Voluntary Petition for relief under the small business provisions of Subchapter 5 of Chapter 11 of

the Bankruptcy Code and the funding of a debtor in possession loan to provide immediate access

to liquidity, preserve the going concern value of the Debtor's business and to eventually enable

the return of the Debtor's furloughed employees.

## Evidentiary Support for First Day Motions

6.      Contemporaneously herewith, the Debtor is filing five First Day Motions seeking

orders granting various forms of relief intended to stabilize the Debtor's business operations and

facilitate the efficient administration of this Chapter 11 case.

7.      I am familiar with the content and substance of the First Day Motions.  The facts

stated therein are true and correct to the best of my knowledge, information and belief, and I

believe that the relief sought in each of the First Day Motions is necessary to enable the Debtor to

operate in Chapter 11 with minimal disruption to its business operations and constitutes a critical

element in successfully implementing a Chapter 11 strategy.   A description of the relief requested

and the facts supporting each of the First Day Motions follows below.

**A.      Debtor's Motion for Entry of an Order (I) Authorizing the Rejection of an Unexpired Lease for Real Property Located at 445 Park Avenue, New, New York 10022 *Nunc Pro Tunc* to Petition Date, (II) Authorizing the Abandonment of Related Personal Property, and (III) Granting Related Relief (the "Store Lease Rejection Motion").**

8.      Pursuant to the Store Lease Rejection Motion, the Debtor seeks entry of an Order

(a) authorizing the Debtor's rejection of the unexpired nonresidential lease (as amended, the "Store

Lease") between the Debtor, as tenant, and Park Avenue Properties Associates LLC, as landlord

---

[1]      Bespoke Capital Services LLC and CSC T. Anthony, LLC share common ownership with the Debtor.

(the "Landlord"), for a portion of the ground floor and a portion of the basement of the building located at 445 Park Avenue, New York, New York 10022 (the "Property") *nunc pro tunc* to the Petition Date; (b) authorizing the abandonment of certain equipment, fixtures, furniture, or other personal property that are located at the Property (collectively, the "Personal Property"); and (c) granting related relief.

9.     On or about June 5, 2018, the Store Lease was assigned by T. Anthony Ltd. (whose business was contemporaneously acquired by the Debtor) to the Debtor with the written consent of the Landlord.  The Store Lease expires on June 30, 2039 and the base and additional rent under the Store Lease is currently the approximate amount of $95,000 per month.   The Debtor has now determined that it is not economically feasible or beneficial to the Debtor and its estate to continue with the Store Lease because of the impact of the Covid-19 Pandemic on all travel businesses, including luggage businesses and the fact that office workers have not returned to Midtown Manhattan in significant numbers.  The Debtor and its advisors have also determined that no net benefit will be realized from any effort on the part of the Debtor to retain and potentially market the Store Lease because of the lack of demand for luxury retail space in Midtown Manhattan. Similarly, because of the Covid-19 Pandemic, the Personal Property (which consists of store fixtures and furniture) remaining at the Property has *de minimis* value or no value and the costs to the Debtor of retrieving, marketing, and reselling the Personal Property will exceed any recovery that the Debtor and its estate could reasonably obtain in exchange for such property.

10.     Furthermore, prior to the Petition Date, the Debtor vacated and unconditionally surrendered the Property to the Landlord.   The Store Lease to be rejected provides no benefit to the Debtor's estate and its rejection will result in savings of approximately $95,000 per month in rent and associated costs.  Absent rejection, the Debtor would be obligated to pay rent under the

4

Store Lease even though it has ceased operations at and is no longer in possession of the Property. Accordingly, in an effort to avoid unnecessary post-petition rent and administrative expenses, the Debtor has determined in an exercise of its business judgment and in the best interest of the Debtor's estate to seek the rejection of the Store Lease and abandonment of the Personal Property *nunc pro tunc* to the Petition Date.

**B.     Debtor's Motion for Entry of an Order Authorizing Rejection of License Agreement with Moda Italiana, Inc. *Nunc Pro Tunc* to Petition Date (the "License Rejection Motion")**

11.     Pursuant to the License Rejection Motion, the Debtor seeks entry of an order authorizing it to reject its License Agreement with Moda Italian Inc. ("Moda") dated August 28, 2019 (the "License Agreement") *nunc pro tunc* to the Petition Date.  As the licensee under the License Agreement, Moda runs the Debtor's website through which luggage and travel related accessories are sold to retail customers.  The Debtor believes the License Agreement provides no benefit to the Debtor's estate because it provides for the payment of above-market fees to Moda. Indeed, the Debtor projects that Moda's fees under the License Agreement will approximate half of the Debtor's net sales from its website during the first thirty (30) days of its bankruptcy case. Following the rejection of the License Agreement, the Debtor intends to self-manage its retail website.   Accordingly, in an effort to avoid unnecessary administrative expenses, the Debtor has determined in an exercise of its business judgment and in the best interest of the Debtor's estate to seek the rejection of the License Agreement with Moda *nunc pro tunc* to the Petition Date.

**C.** **Debtor's Motion for Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs, and (II) Granting Related Relief (the "Schedules and Statements Extension Motion").**

12.     Pursuant to the Schedules and Statements Extension Motion, the Debtor seeks entry of an order extending the deadline by which the Debtor must file its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs (collectively, the "Schedules and Statements") by thirty days, for a total of forty-four days from the Petition Date, without prejudice to the Debtor's ability to request additional extensions.

13.     Given the size and complexity of the Debtor's business and financial affairs, and the critical matters that the Debtor's management and professionals were required to address prior to the commencement of this Chapter 11 case, the Debtor was not in a position to complete the Schedules and Statements as of the Petition Date.   Accordingly, the relief requested in the Schedules and Statements Extension Motion is warranted under the circumstances.

**D.     Debtor-in-Possession Financing and Cash Collateral Motion**

14.     Once the Debtor determined that a restructuring would be executed through a Chapter 11 filing, the Debtor secured a debtor-in-possession ("DIP") financing proposal from its exiting prepetition lender, Bespoke Capital Services LLC, for which it shares common indirect ownership.   Bespoke Capital Services LLC was unwilling to provide DIP financing on an unsecured, junior-lien, or *pari passu* basis.   Because of the impact of the ongoing Covid-19 Pandemic on the travel industry, the Debtor's balance sheet insolvency and history of operating losses, my belief is that debtor in possession financing is not available on any terms from any party that lacks an affiliation with the Debtor.   Accordingly, and subject to approval of the Court, the

Debtor and Bespoke Capital Services LLC plans to enter into a DIP financing agreement that will facilitate the Chapter 11 reorganization process by providing the Debtor with new capital—in the form of a senior secured, priming, superpriority debtor-n-possession loan in the principal amount of $750,000 (the "DIP Financing")—which is needed to allow the Debtor to continue operations through the reorganization process.

15.     Based on my experience with the Debtor's business, interim approval of the DIP Financing is necessary and appropriate to allow the Debtor immediate access to liquidity pending approval of the Debtor's motion to approve DIP Financing on a final basis. Interim funding in the amount of $170,000 and immediate access to cash collateral of Bespoke Capital Services LLC, as prepetition secured lender, will provide the Debtor with sufficient liquidity to assure its employees, customers, vendors and suppliers that the Debtor has the working capital necessary to continue its operations in the ordinary course and pay critical vendors as part of a critical vendor program in the event the Court approves such payments.

16.     As of the Petition Date, the Debtor will have less than $7,300 in cash on hand and anticipates it will experience cash losses totally approximately $69,000 during the next four weeks. Thus, from the outset of its Chapter 11 case, the Debtor will require immediate access to the DIP Financing and authority to use cash collateral to ensure it has sufficient liquidity to operate its business as a going concern. In my professional opinion, the proposed DIP Financing is sufficient to operate the Debtor's operations and to maintain sufficient liquidity, for the projected duration of the Chapter 11 case, thereby providing the Debtor with (a) sufficient working capital to operate its business and administer its estate; (b) an appropriate liquidity cushion for anticipated vendor contraction and tightening of trade terms; (c) the ability to pay administrative expenses incurred during its Chapter 11 case; and (d) a positive message to convey to the luggage industry that its

Chapter 11 case is sufficiently funded, which is critical to address the concerns of the Debtor's customers, employees and vendors. As such, immediate access to Bespoke Capital Services LLC's cash collateral and interim financing under the DIP loan agreement is essential to the Debtor's ability to minimize disruptions and avoid irreparable harm to its business. Therefore, on behalf of the Debtor, I respectfully submit that the Court should approve the DIP Financing motion.

      **E.**      **Debtor's Bank Account Motion**

      17.      The Debtor seeks entry of an order (the "Bank Account Motion") authorizing the Debtor to (i) continue and maintain it existing bank accounts and (ii) continue using its existing check stock. As of the Petition Date, the Debtor maintains three (3) bank accounts (the "Bank Accounts") at HSBC Bank USA, N.A. (account numbers ending in 5595, 5609, and 5633). To minimize administrative expense, delay and interruption to its internet-based business, the Debtor requests authority to continue using its existing Bank Accounts.

      18.      In the ordinary course of business, the Debtor uses sequentially numbered check stock with the Debtor's logo printed thereon. To minimize administrative expense and delay, the Debtor requests authority to continue using its existing check stock, substantially in the form existing immediately prior to the Petition Date, without reference to the Debtor's status as "Debtor in Possession."

      19.      I believe that the relief requested in the Bank Account Motion is in the best interest of the Debtor's estate, its creditors, and all other parties in interest, and will enable the Debtor to continue to operate in the ordinary course without disruption. Accordingly, on behalf of the Debtor, I respectfully submit that the Court should approve the Bank Account Motion.

**F.     Debtor's Motion for (I) Authority to Pay Certain Prepetition Obligations to Critical Vendors; and (II) Related Relief (the "Critical Vendors Motion")**

20.     Through the Critical Vendors Motion, the Debtor requests entry of an order (i) authorizing, but not directing, the Debtor to pay up to $100,000 on an interim basis (the "Interim Critical Vendor Cap") and an additional $200,000 ("Final Critical Vendor Cap" and together with the Interim Critical Vendor Cap, the "Critical Vendor Caps") in aggregate critical vendor claims of critical vendors and (ii) granting related relief.

21.     The Debtor's customers expect and rely upon the Debtor's retail store and website to stock unique and specialized products and brands.  As such, the Debtor's ongoing ability to obtain goods and services from its Critical Vendors as provided herein is necessary to preserve the value of its estate for the benefit of its stakeholders.  To keep its business running efficiently and smoothly, the Debtor relies on vendors that are sole- or limited-source suppliers of certain popular branded or otherwise "in demand" goods that are not available from other vendors and third-party suppliers.  The Debtor does not have long-term supply agreements with its vendors and, instead, sources goods on an order-by-order basis.  Consequently, the Debtor has limited leverage to compel performance on commercially reasonable terms.

22.     Absent the prompt payment of the Critical Vendor Claims, the Debtor would be unable to maintain sufficient levels of inventory with the variety and quality its customers have come to expect.  The Debtor must be able to continue to operate its retail store and website in the ordinary course of business in order to maximize the value available for distribution to creditors, which requires cooperation from certain key vendors.  Consequently, the Debtor's request for authority to honor the Critical Vendor Claims is both consistent with the priorities established by the Bankruptcy Code and necessary to preserve the value of its business.

23.     In addition, the Debtor's authority to address its Critical Vendor Claims in the initial days of this Chapter 11 case will send a clear signal to its suppliers and customers that the Debtor is both willing and, importantly, able to conduct business as usual after the Petition Date. The Debtor will also use its authority to secure customary trade terms from its vendors.  Absent such relief the Debtor may suffer immediate and irreparable harm because Critical Vendors may have no incentive to continue to provide the Debtor with trade credit.  In fact, the Debtor believes many vendors will begin demanding accelerated payment, cash-in-advance or cash-on-delivery. Further contractions of trade terms and the unavailability of "in demand" goods could be catastrophic for the Debtor, its estate, creditors, and all stakeholders.  In contrast, the preservation of working capital through the retention or reinstatement of trade credit in sufficient amounts and on favorable terms will conserve liquidity and allow for continuation of the Debtor's businesses.

24.     In sum, I believe that the relief requested in the Critical Vendors Motion is in the best interest of the Debtor's estate, its creditors, and all other parties in interest, and will enable the Debtor to continue to operate in the ordinary course without disruption that may immediately and irreparably harm the Debtor's business.  Accordingly, on behalf of the Debtor, I respectfully submit that the Court should approve the Critical Vendors Motion on an interim basis to avoid irreparable harm to the Debtor's estate.

**Information Required by Local Bankruptcy Rule 1007-2**

25.     Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which I have provided herein and in **Exhibit A** through **Exhibit F** hereto.   Specifically, this declaration and the exhibits contain the following information with respect to the Debtor:[2]

---

[2]     The information contained in **Exhibit A** through **Exhibit F** attached to this declaration does not constitute an admission of liability by, nor is binding on, the Debtor.  The Debtor

- Pursuant to Local Bankruptcy Rule 1007-2(a)(3), I state, that to the best of my knowledge, information and belief, that no creditors' committee was organized prior to the entry of the order for relief in this Chapter 11 case.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(4), **Exhibit A** hereto provides the following information with respect to each of the holders of the Debtor's twenty largest unsecured claims, excluding claims of insiders: the creditor's name; the address (including the number, street, apartment, or suite number, and zip code, if not provided in the post office address); the telephone number; the name(s) of the person(s) familiar with the debtor's account; a brief description of the claim; the nature and approximate amount of the claim; and an indication of whether the claim is contingent, unliquidated, disputed, or partially secured.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(5), **Exhibit B** hereto provides the following information with respect to the holder of the only secured claim against the Debtor: the creditor's name; the address (including the number, street, apartment, or suite number, and zip code, if not provided in the post office address); the amount of the claim; a brief description of the claim; an estimate of the value of the collateral securing the claim; and an indication of whether claim or lien is disputed at this time.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(6), **Exhibit C** hereto provides a summary of the Debtor's assets and liabilities.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(7), I state that there are no publicly held securities of the Debtor.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(8), I state that none of the Debtor's property is in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, secured creditors or agent for such an entity.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(9), I state that the Debtor has an office located at 750 Lexington Avenue, 28th Floor, New York, New York and maintains warehouse space at 20 Meridian Road, Eatontown, New Jersey. In addition, the Debtor currently has a lease for a retail store located at 445 Park Avenue, New York, New York, but has vacated the space and is filing the Store Lease Rejection Motion on the Petition Date. Finally, the Debtor has a lease for a retail store located at 107 East 57th Street, New York, New York, from which it intends to continue its operations after the Petition Date.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(10), I state that Debtor's substantial assets are located at 107 East 57th Street, New York, New York and 20 Meridian Road, Eatontown, New Jersey; the Debtor's books and records are located at 750 Lexington Avenue, 28th Floor, New York, New York; and the Debtor has no assets located outside the territorial limits of the United States.

---

reserves all rights to assert that or claim listed herein is a disputed claim or debt, and to challenge the priority, nature, amount, or status of any such claim or debt.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(11), I state that *Park Avenue Properties Associates LLC v. T. Anthony, LLC and T.A. Remainder Company, Inc*., Index No. 652406/2020, is pending in New York County Supreme Court. In that lawsuit, Park Avenue Properties LLC is seeking a monetary judgment against the Debtor for monies allegedly due and owing in connection with the retail store that is subject of a lease rejection motion that will be filed herewith. A judgment or seizure of the Debtor's property is not imminent.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(12), **Exhibit D** hereto sets forth a list of the names of the individuals who comprise the Debtor's existing senior management, their tenure with the Debtor, and a belief summary of their relevant responsibilities and experience.

- Pursuant to Local Bankruptcy Rule 1007-2(b)(1)-2(A) and (C), **Exhibit E** hereto provides the estimated amount of payroll of the Debtor's employees (not including officers, directors and equity holders) and the estimated amounts to be paid to officers, equity holders, directors and financial and business consultants retained by the debtor, for the 30-day period following the Petition Date.

- Pursuant to Local Bankruptcy Rule 1007-2(b)(3), **Exhibit F** hereto provides a schedule for the 30 day-period following the Petition Date, of estimated cash receipts and disbursements, net gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to a understanding of the foregoing.

[Signature Page Follows]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

statements are true correct.

Dated: New York, New York
      October 22, 2020

Name:  Steven M. Cherniak
Title:    Chief Operating Officer

## **EXHIBIT A**

**List of Holders of the Debtor's Twenty Largest Unsecured Claims**

Please see the *List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders*, which is being filed contemporaneously with this Declaration. The information contained in the *List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* shall not constitute an admission of liability by, nor is it binding on, the Debtor. The Debtor reserves all rights to assert any debt or claim included herein is a disputed claim or debt, and to challenge the priority, nature, amount, or status of any such claim or debt.

**EXHIBIT B**

**<u>Holder of the Debtor's Secured Claim</u>**

Pursuant to Local Bankruptcy Rule 1007-2(a)(5), the following is the Debtor's only secured creditor as of the Petition Date:

Bespoke Capital Services LLC holds a secured claim in the amount of $492,166.06, which is secured by a lien on, and security interest against substantially all of the Debtor's assets, whether now owned or hereafter acquired. The collateral's value is unknown as of the date hereof. Bespoke Capital Services LLC is represented by Andrew J. Kelly, Esq., The Kelly Firm, P.C., 1011 Highway 71, Suite 200, Spring Lake, New Jersey 07762.

## EXHIBIT C

### Summary of Debtor's Assets and Liabilities

Pursuant to Local Bankruptcy Rule 1007-2(a)(6), the following are estimates of the Debtor's total assets and liabilities. The following financial data is the latest available information and reflects the Debtor's financial condition as of the Petition Date.

The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtor. The Debtor reserves all rights to assert any debt or claim included herein is a disputed claim or debt, and to challenge the priority, nature, amount, or status of any such claim or debt.

| Assets and Liabilities | Amount |
|---|---|
| Total Assets (Book Value as of 6.30.20) | Approximately $1.2 million |
| Total Liabilities (Book Value as of 6.30.20) | Approximately $3.4 million |

# EXHIBIT D

## The Debtor's Senior Management

Pursuant to Local Bankruptcy Rule 1007-2(a)(12), the following provides the names of the individuals who constitute the Debtor's existing senior management, their tenure with the Debtor, and a brief summary of their responsibilities and relevant experience as of the Petition Date.

| Name/Position | Relevant Experience/Responsibility | Tenure |
|---|---|---|
| Charles S. Cohen | Chairman/CEO | June 2018 |
| Steven M. Cherniak | Chief Operating Officer | June 2018 |
| Zach Headophol | Retail/E-Commerce Advisor | June 2018 |
| Nick Smith | Retail/E-Commerce Advisor | September 2019 |

<u>**EXHIBIT E**</u>

**The Debtor's Payroll for the 30-Day Period**
**Following the Filing of the Debtor's Chapter 11 Petition**

Pursuant to Local Bankruptcy Rule 1007-2(b)(1)-2(A) and (C), the following provides, for the 30-day period following the Petition Date, the estimated amount of weekly payroll to the Debtor's employees (exclusive of officers, directors, and stockholders), the estimated amount paid and proposed to be paid to officers, directors and stockholders, and the amount paid or proposed to be paid to financial and business consultants retained by the Debtor.

| Payments | Payment Amount |
|---|---|
| Payment to employees (not including officers, directors, and stockholders) | $5,831.25 |
| Payments to officers, directors, and stockholders | $0.00 |
| Payments to financial and business consultants | $0.00 |

## EXHIBT F

**The Debtor's Estimated Cash Receipts and Disbursements for the 30-Day Period Following the Filing of the Debtor's Chapter 11 Petition**

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides, for the 30 day-period following the Petition Date, the Debtor's estimated cash receipts and disbursements, net gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees.

| Type | Amount |
|------|--------|
| Cash Receipts (Net) | $44,815 |
| Cash Disbursements | $113,943 |
| Net Cash Loss | $69,128 |
| Unpaid Post-Petition Date Obligations (Excluding Professional Fees) | $41,030 |
| Unpaid Post-Petition Date Receivables (Excluding Professional Fees) | $0.00 |